## KEENE VS. THE STATE.

1. PUNISHMENT— CHANGE OF STATUTE.—An indictment for manslaughter was found under a statute which made the offense punishable by imprisonment in the state prison not more than ten years nor less than one, but which did not recognize the existence of different degrees of

manslaughter; before trial the statute was so changed as to prescribe four different degrees of that crime, varying in degree and grade of punishment from a fine of not exceeding one thousand dollars, or imprisonment in the county jail not exceeding one year, to imprisonment in the state prison for not less than two nor more than ten years, and the new statute provided also that no offense previously committed should be affected by it, except where it mitigated the punishment, and also that all prosecutions should proceed as if there had been no change or repeal, except that the proceedings should be conducted according to such new statute, and be in all respects subject to its provisions. *Held*, that the accused, under such indictment found under the old statute, might lawfully be convicted and punished for manslaughter in any one of its degrees, as defined and prescribed by the new statute.

2. SAME. — As to offenses already committed, it is competent for the legislature to mitigate the punishment so as to shorten the period of imprisonment, or provide that it shall be in the county jail instead of the state prison, or by fine in lieu of either, and the accused may lawfully be sentenced under such subsequent statute. *

(3 Chand., 109.)

ERROR to the Circuit Court for *Grant* County.

The plaintiff in error, *Keene*, was indicted for manslaughter under the statutes of 1839, before the revised statutes of 1849 went into effect, and it was assigned for error that the court refused an instruction asked for by the counsel for the accused to the effect that the jury must find him guilty of manslaughter in the first degree, or not guilty. The court instructed the jury that they might find the accused guilty under either of the four degrees of manslaughter as defined by the revised statutes of 1849, as they should find the facts. He was found guilty of manslaughter in the fourth degree. A motion for a new trial on account of alleged error in such instruction, and in refusal to instruct as asked, was denied; also a motion in arrest of judg-

---

* But it seems that any law changing the punishment for offenses committed before its passage is *ex post facto* and void under the constitution, unless the change consists in the remission of some separable part of the punishment before prescribed, or is referable to prison discipline or penal administration as its object. *Hartung v. People*, 22 N. Y., 95.

ment; and the accused was sentenced to imprisonment in the state prison for one year.

By the statute of 1839 it was provided "that every person who shall commit the crime of manslaughter shall be punished by imprisonment in the state. prison, not more than ten years nor less than one year." This was the only provision for the punishment of manslaughter in whatever degree, as defined by the statutes of 1849, the statute of 1839 not assuming to create or define different degrees of that crime. The revised statutes of 1849 provided for and defined four degrees of manslaughter, and as punishment for the crime of manslaughter provided that persons convicted of manslaughter in the first, second, and third degrees, should be imprisoned in the state prison, as follows: those guilty in the first degree for a term not less than seven years; in the second degree not more than seven nor less than four years; in the third not more than four years nor less than two; in the fourth degree by imprisonment in state prison for two years, or in a county jail not exceeding one year, or by a fine not exceeding one thousand dollars, or by both. It was claimed on behalf of the plaintiff in error, that under the act of 1849 (Rev. Stat., ch. 133, sec. 22), a higher punishment was provided than was prescribed under the act of 1839, which made the punishment not more than ten years nor less than one year's imprisonment, as under the act of 1849, a party convicted of manslaughter in the fourth degree might be imprisoned one entire year and also fined in the sum of not less than one thousand dollars.

The statutes of 1849 (Rev. Stat., ch. 157, sec. 3) provided "that no offense committed and no penalty or forfeiture incurred, previous to the time when any statutory provisions shall be repealed, shall be affected by such repeal; except that when any punishment, forfeiture or penalty shall have been mitigated by the provisions of these revised statutes, such provisions shall apply to and control any judgment to be pronounced *after* the said statutes shall take effect, for any offense

committed *before* that time." Sec. 4 provided that "no prose-cution for any offense, or the recovery of any penalty or for-feiture, *pending at the time* any statute or provision shall be re-pealed, shall be affected by such repeal; but the same shall proceed in all respects as if such provision had not been re-pealed, except that all such proceedings, had after the time when the said revised statutes shall take effect, shall be con-ducted according to the provisions of the said statutes, and shall be in all respects subject to the said provisions."

While it was obvious that the punishment in a given case under the revised statutes of 1849, for manslaughter in the fourth degree, might exceed the *minimum* punishment pre-scribed under the act of 1839, yet the *minimum* punishment under the revised statutes *might be* much less than under the act of 1839, and by prescribing degrees of manslaughter the revised statutes of 1849 gave to the jury, as they should find the facts, power to prescribe the degree of punishment within certain limits.

*Jas. H. Knowlton*, for plaintiff in error.

*S. Park Coon*, Attorney General, for defendant in error.

KNOWLTON, J. It appears from the record in this case, that the plaintiff in error was indicted for manslaughter, and had his trial at the October term, 1849, of the circuit court of Grant county.

On his trial, his counsel asked the court to instruct the jury that "the jury must, in this case, find the defendant guilty of manslaughter in the first degree, or not guilty," which the court refused, but charged them, "that they might, upon this indictment, according to the evidence, find a general verdict of not guilty, or find a verdict of guilty of manslaughter of either first, second, third or fourth degrees of manslaughter, as provid-ed in the revised statutes of Wisconsin."

The jury returned a verdict of "guilty of manslaughter in the fourth degree." Motions for a new trial and in arrest of

judgment were interposed, which were overruled, and the plaintiff sentenced to one year's imprisonment in the county jail. The plaintiff in error then sued out his writ of error, and brought the cause to this court. It is contended that the court erred in refusing the instruction asked, and in charging the jury as it did; in not granting a new trial; in not arresting the judgment, and in passing sentence upon the prisoner.

It is argued that as the crime was committed and the indictment found prior to the revised statutes going into operation, that the trial and judgment, if any, must be in accordance with the statutes of 1839, there being no grades or degrees in the crime of manslaughter in existence, at the time of the finding of the indictment, and the revised statutes having created four different grades or degrees of that crime, and also a greater and different punishment from that in force at the time the act was committed and indictment found. This comprises the whole case, so far as error is alleged.

In order that we may more readily see the force of these objections, and the positions assumed, we will refer to the statutes relative to the subject matter, and give them a careful examination. The statutes of 1839, page 348, sec. 8, provide, "that every person who shall commit the crime of manslaughter, shall be punished by imprisonment in the state prison not more than ten years, nor less than one year." This is all the statute of 1839 contains upon this point.

The revised statutes of 1849, sec. 22, ch. 133, provide as follows : " Persons convicted of manslaughter in the first, second and third degrees, shall be punished in the state prison as follows : Persons convicted of manslaughter in the first degree, for a term not less than seven years; if convicted of manslaughter in the second degree, for a term not more than seven nor less than four years ; if convicted of manslaughter in the third degree, not more than four years and not less than two years." The next section provides that " every person convicted of manslaughter in the fourth degree shall be punished

by imprisonment in the state prison for two years, or by imprisonment in a county jail not exceeding one year, or by a fine not exceeding one thousand dollars, or by both such fine and imprisonment."

It is contended that as there is no limit specified to the punishment of a person convicted of manslaughter in the first degree under this act, it becomes chargeable with creating a higher grade of punishment than that prescribed by the statute of 1839. But this is answered by reference to sec. 30 of the same chapter, which provides that "every person who shall commit the crime of manslaughter shall be punished by imprisonment in the state prison not more than ten years nor less than one year."

This section being verbatim that of the statute of 1839, clearly limits the punishment in all cases to as low a grade as that of 1839, and does not permit a sentence to extend beyond ten years, and answers that objection beyond cavil. This comprises all the statutory provisions concerning the punishment of this crime. There is, however, provision made which applies to the mode of trial and sentence, ch. 157, secs. 3 and 4, of the act repealing the statute of 1839, to wit: "No offense committed, and no penalty or forfeiture incurred previous to the time when any statutory provision shall be repealed, shall be affected by such repeal ; except that when any punishment, forfeiture or penalty shall have been mitigated by the provisions of these revised statutes, such provision shall apply to and control any judgment to be pronounced after the said statutes shall take effect for any offense committed before that time."

"Sec. 4. No prosecution for any offense, or the recovery of any penalty or forfeiture, pending at the time any statutory provision shall be repealed, shall be affected by such repeal; but the same shall proceed in all respects as if such provision had not been repealed, except that all such proceedings had after the time when the said revised statutes shall take effect

shall be conducted according to the provisions of the said statutes, and shall be in all respects subject to the said provisions." Now we need not go to the common law, or in search of adjudicated cases, to prove that no greater punishment could be inflicted than the one in force at the time the crime was committed, nor that the accused shall have the benefit of any mitigation of punishment under a subsequent act of the legislature ; the legislature having settled this point in sec. 3, above cited. It is clear at common law, that no different punishment of a higher grade can be inflicted in such cases, though one of a different and less grade may be. But who is to judge of the degree of punishment? Is it the prisoner or the court ? Unquestionably the court. Suppose a murder has been committed and an indictment found, but before trial the legislature abolish capital punishment, the prisoner is convicted and claims the sentence of death to be pronounced upon him, rather than endure, as he may say, that greater punishment of imprisonment for life, without the hope of pardon or the enjoyment of any of nature's blessings destined for his race; can he have this sentence passed upon him ? Can the governor issue a warrant to carry into effect such sentence, or the sheriff legally execute it, if issued ? Again, if he is sentenced under the then existing law, can he claim his discharge upon a writ of *habeas corpus?* If he could not have his choice of punishment in this supposed case (which is as strong a case as we could imagine), why, in another of much less magnitude and moment to him ?

The revised statutes did not create manslaughter a crime ; it existed as such before ; nor did it change the mode of punishment except in one state of case, where it reduced the punishment from one year's imprisonment in the state prison, to a few months' imprisonment in the county jail, or to a mere fine "not exceeding one thousand dollars." This is clearly a mitigation of punishment. True, the revised statutes arrange the crime of manslaughter into degrees ; but this amounts to nothing

more than giving the jury an additional duty, and relieving the court from a duty that before devolved upon it. The grade is to be gathered from the facts of the case canvassed by the jury.

But it is contended that the prisoner had a right to the clemency of the judge, but is now thrown upon the sympathy of a jury. If this reasoning be carried out, we permit the accused to say : " when I committed the act you complain of, had I been tried, judge A. would have presided over my trial, and I now claim, as a legal right, to be tried by him instead of this judge B.; for certainly, I would receive a more lenient trial by him than by judge B." Again, when we passed from a territorial to a state government, all persons charged with crime could say : " when I committed this offense, I was indicted as acting against the peace and dignity of the United States; I then had a right to be tried by a district court, over which a judge presided who was appointed by the President of the United States; now you attempt to try me by a circuit court, over which a judge presides who has been selected by a general vote of the people of the circuit, and I claim my discharge as my legal right. I do not regard this *law* you choose to call a *constitution*, that has been adopted since I committed the act you complain of." If such are the principles of our laws, every change of criminal law, or of the judges whose duty it is to administer it, would be a day of jubilee to criminals not sentenced.

But we must act as directed by our constitution and statutes. Sec. 4, above cited, required the circuit judge who tried the cause, to do as he did on the trial ; the accused could not have been tried under the old statute, there being a difference in impaneling jurors, and many other important matters, the plaintiff in error placed himself in that position, and asked an instruction to the jury strictly under the revised statutes. Why such an instruction was asked can only be accounted for on the ground that this counsel was aware that the evidence

was not sufficient to make out a case of manslaughter in the first degree, when it was clearly a case in the fourth degree; and under that instruction the jury must acquit the accused, although he would have been convicted under the statute of 1839 by a general verdict of guilty.

The views here taken are fully sustained in the opinion of the court delivered by SAVAGE, C. J., in the case of *People v. Phelps*, 5 Wend., 10. We therefore see no cause, either from adjudicated cases, in reason or justice, to disturb the judgment of the circuit court.

Conviction affirmed.